Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel II

| | | |
|---|---|---|
| ÁNGEL ADORNO CONDE<br>Apelante<br><br>v.<br><br>AMGEN MANUFACTURING LIMITED<br>Apelada | KLAN202301150 | Apelación procedente del Tribunal de Primera Instancia, Sala de Humacao<br><br>Caso Núm. HU2022CV00024<br><br>Sobre: Represalias en el empleo (Ley Núm. 115 de 20 de diciembre de 1991) Procedimiento Sumario (Ley Núm. 2 de 17 de octubre de 1961) |

Panel integrado por su presidente, el Juez Bermúdez Torres, el Juez Adames Soto y la Jueza Aldebol Mora

Adames Soto, Juez Ponente

## **SENTENCIA**

En San Juan, Puerto Rico, a 29 de febrero de 2024.

Comparece el señor Ángel Adorno Conde, (señor Adorno Conde, querellante o apelante), a través de un *recurso de apelación,* solicitando la revocación de la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Humacao, (TPI), el 13 de diciembre de 2023. En el contexto de un pleito laboral, el foro primario declaró *Ha Lugar* la *Moción Sentencia Sumaria* presentada por Amgen Manufacturing Limited (Amgen, apelada o patrono), al concluir que el señor Adorno Conde no había demostrado ser parte de la clase protegida concebida por la Ley de Represalias, infra, estatuto bajo el cual solicitó remedio.

Por los fundamentos que expresaremos, corresponde confirmar la *Sentencia* emitida.

NÚMERO IDENTIFICADOR

SEN2024_____

## I.  Resumen de trato procesal pertinente

El 11 de enero de 2022, el señor Adorno Conde instó una *Querella* contra Amgen, en la que alegó haber sido empleado de esta empresa, por contrato a tiempo indeterminado, desde el 5 de agosto de 1995 hasta el 30 de enero de 2019, fecha en que fue despedido. Adujo que la causa de su despido fue por un acto de represalia de su patrono, luego de haber solicitado que fuera investigado cierto incidente laboral, suscitado el 17 de enero de 2019, con la señora Teresita Rivera (señora Rivera), quien era su supervisora. Sobre el referido incidente laboral, alegó que se encontraba en su lugar de trabajo realizando varias de sus funciones cuando, de repente, la señora Teresita Rivera se presentó donde él estaba y, sin motivo alguno, le gritó preguntándole el por qué se encontraba allí, insinuando que no estaba realizando sus funciones. Ante lo cual, este contestó que estaba allí porque su compañera de trabajo, la señora Michelle Romero, le había solicitado que la relevara mientras leía unos procedimientos. Adujo haberle indicado a la señora Rivera que difería de lo que insinuaba, pues las tareas que había ejecutado estaban documentadas en el lote de ese día. No obstante, aseveró que la señora Rivera se le acercó y, de forma retante, le gritó vituperios y se marchó.

El querellante alegó, además, que, al día siguiente de lo antes narrado, el 18 de enero de 2019, el señor Jorge Pagán, (señor Pagán), supervisor de la señora Rivera, se reunió con él y la señora Rivera en torno al incidente. Sostuvo que, para su sorpresa, la señora Rivera le informó al señor Pagán que el querellante la había tocado. Ante lo cual, el querellante le informó al señor Pagán que las alegaciones de la señora Rivera eran falsas, habiendo cinco empleados o más que podían corroborar su versión de los hechos, por lo que solicitó que se realizara una investigación. En este mismo día, el señor Pagán le dio instrucciones al querellante para que se fuera a su casa, informándole que le serían pagados los días que se

encontrara fuera de su empleo, hasta que el Departamento de Recursos Humanos realizara la investigación correspondiente.

Entonces, luego de que fuera despedido, el querellante adujo haberse percatado de que la causa de dicho despido fue que el señor Pagán había tergiversado su testimonio brindado en la reunión del 18 de enero de 2019, al interpretar que había admitido haber tocado a la señora Rivera.

En definitiva, el querellante esgrimió la causa de acción provista en la Ley Núm. 115-1991, *Ley contra el despido injusto o represalias a todo empleado por ofrecer testimonio ante un foro legislativo, administrativo o judicial*, 29 LPRA sec 191, *et seq.*, (Ley de Represalias), porque, presuntamente, su despido respondió a haber solicitado que se investigara el incidente aludido, a través de los compañeros de trabajo que estaban en el lugar y el examen de los videos grabados por las cámaras de seguridad. La *Querella* fue presentada bajo el proceso sumario dispuesto por la Ley 2-1961, 32 LPRA sec. 3118, *et seq.,* Ley de Procedimiento Sumario de Reclamaciones Laborales.

Valga llamar la atención al hecho de que la referida *Querella* se circunscribió a solicitar los remedios dimanantes de la Ley de Represalias, **sin** incluir una causa de acción por despido injustificado bajo la Ley 80-1976, Ley sobre Despidos Injustificados, 29 LPRA sec 185(a) *et seq,* (Ley 80).

En respuesta, 1 de abril de 2021, la parte apelada presentó su *Contestación a Querella,* admitiendo unas alegaciones y negando otras, además de esgrimir defensas afirmativas. Respecto a esta últimas, aseveró que la acción presentada por el querellante no exponía una causa de acción que justificara la concesión de un remedio, entre otras, porque existían razones legítimas de negocio para el despido, que no fueron la represalia. Sobre ello abundó que, el 17 de enero de 2019, el señor Adorno Conde agredió y tuvo contacto físico con su supervisora, la señora Rivera, en las facilidades de Amgen. Específicamente, aseveró que, luego de que la señora Rivera le preguntara al señor Adorno Conde sobre qué labores estaba

realizando en ese momento, este procedió a halarle la oreja izquierda y a agarrarle fuertemente el brazo izquierdo, ocasionándole dolor. Que, a partir de tener conocimiento de este incidente, la compañía llevó a cabo una investigación en la que, adujo, corroboró la actuación violenta del querellante hacia la señora Rivera. Por tanto, con el propósito de preservar el buen y normal funcionamiento de la empresa, Amgen se vio obligado a despedir al apelante. Añadió que no era la primera vez que el señor Adorno Conde había sido disciplinado por conducta agresiva y violenta en el empleo. Por ello, sostuvo que hubiese sido una imprudencia esperar a que se repitiera este tipo de conducta por el querellante, que va en contra del deber patronal de mantener un lugar de trabajo libre de riesgos contra la salud o integridad personal de sus empleados. Es decir, que el despido fue la consecuencia de la investigación realizada por el patrono sobre el incidente, no por motivo de lo declarado por el querellado en la reunión con sus supervisores.

No obstante, el 17 de noviembre de 2023, Amgen presentó una *Moción de Sentencia Sumaria*. Comenzó por afirmar que el señor Adorno había presentado la *Querella* solo bajo la Ley de Represalias, y no al amparo de la Ley 80, pues había pasado más de tres de los hechos alegados, (por tanto, la causa de acción bajo la Ley 80 estaría prescrita). Por tanto, continuó advirtiendo Amgen, correspondía al querellante probar que había realizado una actividad protegida, bajo la definición que de esta ofrece la Ley de Represalias, y que el patrono lo habría despedido por realizarla, sin que el TPI tuviera que evaluar si existía justa causa para el despido, pues esto último correspondía a una causa de acción bajo la Ley 80.

Entonces, conforme lo exige la Regla 36 de Procedimiento Civil, infra, Amgen procedió a enumerar veintiséis hechos que identificó como materiales e incontrovertidos, junto a la documentación que, arguyó, los sustentaban y colocaban al Tribunal en posición de disponer de la causa de acción de manera sumaria. Entonces, en la sección de dicha moción

intitulada *Derecho aplicable*, Amgen sostuvo que los hechos materiales incontrovertidos establecían que la razón para el despido del querellante fue las actuaciones violentas descritas en el incidente que tuvo con su supervisora, y su historial disciplinario, pero no por algún acto en represalia del patrono, al este presuntamente haber participado en alguna actividad de las protegidas por la Ley de Represalias. En particular, aseveró que la presunta actividad protegida alegada por el querellante como causa para su despido, era un mero subterfugio para esgrimir la protección de tal legislación, pues la supuesta investigación que solicitó este sobre el incidente, era la que ya se estaba llevando a cabo por iniciativa de la empresa, cuando fue reunido con la señora Rivera y el señor Pagán para hablar sobre el tema. Es decir, que antes de que el querellante solicitara que se realizara una investigación sobre el referido incidente, ya el patrono estaba llevándola a cabo y, precisamente, en esta participó el señor Adorno, según admitió en la deposición que se le tomó, (fragmento que fue reproducido). Por tanto, al momento en que el querellante fue citado a la reunión con sus supervisores, este ya conocía que se estaba conduciendo una investigación sobre el incidente, y podía que podía tener como resultado su despido.

Por su parte, el mismo 17 de noviembre de 2023, el querellante también instó una *Moción de Sentencia Sumaria.* Inició esgrimiendo que su despido se debió a un acto de represalia, por haber participado en la reunión sobre el incidente, y haber prestado declaración allí, solicitando una investigación sobre los hechos, y quejándose de su supervisora. Que, a los doce días de dicha reunión fue despedido. Afirmó que existían hechos medulares que no estaban en controversia y permitían al TPI dictar sentencia de manera sumaria a su favor. Entonces, conforme lo exige la Regla 36 de Procedimiento Civil, infra, procedió a enumerar cincuenta y seis hechos, que juzgó medulares e incontrovertidos, junto a la prueba documental que presuntamente los sostenían como tales.

Establecido lo anterior, en la sección dedicada a la aplicación del derecho a los hechos, el querellante promovió su teoría legal de que el despido no fue por cuenta de la supuesta agresión a la supervisora, pues el señor Pagán observó el video del incidente y se percató de que no había ocurrido, de modo que tenía que haber sido por que solicitó una investigación sobre tales hechos. Entonces, pasó es examinar los elementos que la jurisprudencia ha identificado para establecer prima facie un caso bajo la Ley de Represalias, siendo en este caso la actividad protegida la reunión que sostuvo con su supervisor sobre el incidente, al solicitarle que se investigara lo acontecido, ocasionándole daño tal solicitud de investigación, pues a los doce días de que la hiciera fue despedido.

En el último día que el TPI les había concedido a las partes para presentar sus respectivos escritos en oposición a sentencia sumaria, el 7 de diciembre de 2023, las partes instaron *Moción conjunta solicitando breve extensión de término para presentar oposiciones a mociones dispositivas*. En el primer inciso de esta moción las partes reconocieron que el foro primario les había concedido hasta el 7 de diciembre de 2023, (pero no las habían presentado). Por tanto, en mutuo acuerdo solicitaron al TPI que les concediera una prórroga, hasta el 18 de diciembre de 2023, para presentar sus respectivos escritos en oposición a sentencia sumaria.

Al próximo día, 8 de diciembre de 2023, el TPI acogió la petición de prórroga conjunta, declarando Ha Lugar lo solicitado, concediendo un término final de diez días de prórroga.

No obstante, el 8 de diciembre de 2023, el TPI emitió la *Sentencia* cuya revocación nos solicita el apelante, desestimando la demanda. Concluyó el foro apelado que el señor Adorno Conde no participó de una actividad que accionara las protecciones de la Ley de Represalias. Razonó el mismo foro que al momento de que el apelante solicitara que se realizara una investigación, ya esta había sido comenzada por parte de Amgen, a raíz de la queja de la señora Rivera el día anterior a que se realizara la reunión con

el apelante. Determinó que el despido del apelante fue el resultado de las sanciones previas del apelante, (incidentes que particularizó en la Sentencia), junto al tercer incidente que provocó la reunión con la señora Rivera y el señor Pagán. Aseveró que el propio apelante había reconocido en su deposición que conocía que la investigación ya había comenzado, antes de que fuera por él solicitada. En definitiva, zanjó el Tribunal que el apelante no había demostrado pertenecer a una clase protegida bajo la Ley de Represalias, y Amgen demostró contar con razones legítimas para el despido.

Para fines de claridad, reproducimos a continuación las determinaciones de hechos que enumeró el TPI en su *Sentencia*:

1. Amgen es una empresa de biotecnología farmacéutica que se dedica al descubrimiento, manufactura y venta de medicamentos recetados para tratar a pacientes a nivel mundial. La Compañía opera una planta en Juncos, Puerto Rico.

2. Adorno comenzó a trabajar para Amgen como empleado regular a tiempo indeterminado el 5 de mayo de 1997, ocupando una posición de Manufacturing Operator II. Se desempeño en varias posiciones, pero al momento de su despido, el querellante ocupaba la posición de Sr. Associate Manufacturing.

3. La querellada evaluó el desempeño laboral del querellante anualmente.

4. El salario más alto devengado por el querellante durante los últimos tres (3) años de empleo fue de $22.74 la hora, equivalentes a $47,299.20 anuales, $3,941.60 mensuales y $909.60 semanales, sin contar beneficios susceptibles de cómputo matemático, tales como plan médico, bonos.

5. La última supervisora del querellante durante su empleo en Amgen fue la Sra. Teresita "Teryna" Rivera ("Rivera"). Para enero de 2019, Rivera se reportaba al Sr. Jorge Pagán ("Pagán"), Sr. Manager de Amgen.

6. El señor Pagán y la señora Rivera tienen una relación de amistad.

7. Durante los períodos relevantes a esta reclamación, Amgen tenía varias políticas aplicables a sus empleados. Incurrir en conducta que viole las políticas de Amgen, podía llevar a acciones disciplinarias, incluyendo el despido, a discreción de Amgen dependiendo de las circunstancias.

8. Amgen tenía vigente una política que prohíbe el discrimen y las represalias en el lugar de trabajo.

9. La política anti-represalias de la Compañía también provee mecanismos para que los empleados reporten conducta discriminatoria o represiva o que de cualquier otra manera viole la misma u otras políticas de Amgen, incluyendo mecanismos anónimos para reportarla.

10. El querellante recibió entrenamientos sobre estos manuales y políticas y tenía acceso a los mismos a través de los sistemas electrónicos de la Compañía, incluyendo el Code of Conduct.

11. El 10 de julio de 2013 el señor Adorno fue suspendido de empleo y sueldo por tres (3) días por agredir verbalmente a una compañera de trabajo, invadir su espacio personal y tocarla deliberadamente.

12. El 23 de abril de 2014 recibió una amonestación escrita y fue colocado en un plan de mejoramiento por incurrir en actos de agresión verbal contra compañeros de trabajo.

13. El 17 de enero de 2019, la señora Rivera reportó que mientras se encontraba laborando en el cuarto 1437 de las facilidades de Amgen, Adorno la agredió agarrándola por el brazo y la oreja.

14. El 17 de enero de 2019, en horas de la tarde, la señora Rivera se comunicó mediante llamada telefónica con su supervisor, Pagán, y le reportó la agresión física de Adorno hacia su persona.

15. El 18 de enero de 2019, a las 6:25 a.m., la señora Rivera le envió un correo electrónico al señor Pagán en donde le informaba el incidente sucedido con el querellante.

16. El supervisor, el señor Pagán, consultó la situación con la Oficina de Recursos Humanos de la Compañía y se decidió comenzar una investigación de lo reportado por Rivera.

17. El 18 de enero de 2019, en horas de la mañana, el supervisor reunió al señor Adorno y la señora Rivera en su oficina como parte de la investigación del evento reportado por ésta el día anterior.

18. Durante la reunión, a preguntas de Pagán sobre el incidente del 17 de enero de 2019, Pagán observó a Adorno tocar a Rivera en el brazo y la oreja.

19. Debido a que la señora Rivera mostro incomodidad de que el querellante la tocara nuevamente, el señor Pagán le solicitó a la señora Rivera que se fuera de la oficina. De esta manera se le daba la oportunidad a que la señora Rivera se tranquilizara.

20. Durante la reunión del 18 de enero de 2019, el querellante le pidió al señor Pagán que hiciera una investigación sobre lo ocurrido con la señora Rivera el día anterior.

21. No obstante, ya la investigación había iniciado como resultado de la queja de la señora Rivera y por recomendación de Recursos Humanos.

22. Durante la reunión del 18 de enero de 2019, el señor Adorno sabía que estaba siendo investigado por el supervisor por el evento del 17 de enero de 2019 con la señora Rivera y que incluso la investigación podía culminar en su despido.

23. El señor Adorno nunca se quejó con la Oficina de Recursos Humanos de Amgen por alegados malos tratos de la señora Rivera hacia su persona.

24. Debido a sus observaciones durante la reunión del 18 de enero de 2019 y a la luz de lo expresado por la señora Rivera en cuanto a la agresión física que sufrió el día anterior por parte del querellante, el señor Pagán consultó la situación con la Oficina de Recursos Humanos de la Compañía.

25. El señor Pagán accedió a las grabaciones de cámaras de seguridad, pero no encontró grabaciones que cubrieran el ángulo del lugar donde había ocurrido el evento entre el señor Adorno y la señora Rivera.

26. La Compañía decidió despedir al señor Adorno debido a lo observado por el señor Pagán, durante la reunión del 18 de enero de 2019, en la cual el señor Pagán presenció al querellante tocar el brazo y oreja de la señora Rivera. Lo anterior se debió a que el señor Adorno hizo esto para demostrar lo ocurrido y coincidió con la misma queja presentada por la señora Rivera en cuanto al incidente entre ambos el día anterior.

27. Además de tomar en consideración la queja de la señora Rivera se tomó en consideración el historial de indisciplinas anteriores del señor Adorno.

29. Adorno fue notificado de su despido el 30 de enero de 2019 vía llamada telefónica.

En desacuerdo con la *Sentencia*, el 26 de diciembre de 2023, el señor Adorno Conde acudió ante nosotros, mediante recurso de apelación, alzando los siguientes señalamientos de error:

**Primero: Declarar ha lugar la moción de sentencia sumaria presentada por la apelada sin darle la oportunidad al apelante de presentar su oposición a la misma, a pesar de estar dentro del término concedido por el TPI para ello.**

**Segundo: Declarar ha lugar la moción de sentencia sumaria presentada por la apelada y dictar sentencia sumariamente contra el derecho puesto que sustentó su sentencia en prueba documental inadmisible por ser prueba de referencia.**

**Tercero: Declarar ha lugar la moción de sentencia sumaria presentada por la apelada y dictar sentencia sumariamente en la que desestimó la reclamación del apelante, a pesar de**

**existir las controversias de hechos sustanciales que impiden disponer este pleito sumariamente, respecto al incidente que la apelada alegó como causa del despido.**

**Cuarto: Al determinar que el apelante no participó en una actividad protegida debido a que ya estaba siendo investigado cuando solicitó una investigación.**

Luego de que le concediéramos término al patrono para expresarse, este instó su *Alegato de Oposición*. Estamos en posición de resolver.

## II.   Exposición de Derecho

### a.   Moción de sentencia sumaria

El propósito de las Reglas de Procedimiento Civil es proveer a las partes que acuden a un tribunal una "solución justa, rápida y económica de todo procedimiento". 32 LPRA Ap. V, R.1. *Rodríguez Méndez v. Laser Eye,* 195 DPR 769, 785 (2016), *Oriental Bank v. Perapi,* 192 DPR 7, 25 (2014). La sentencia sumaria hace viable este objetivo en aquellos casos en que surge de forma clara que "el promovido no puede prevalecer y que el tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia". *Mejías v. Carrasquillo,* 185 DPR 288, 299 (2012). Así, este mecanismo procesal "vela adecuadamente por el balance entre el derecho de todo litigante a tener su día en corte y la disposición justa rápida y económica de los litigios civiles". *Id.* pág. 300; *Ramos Pérez v. Univisión,* 178 DPR 200, 220 (2010).

Procede dictar sentencia sumaria si "las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas y alguna otra evidencia si las hubiere, acreditan la inexistencia de una controversia real y sustancial respecto a algún hecho esencial y pertinente y, además, si el derecho aplicable así lo justifica". *Lugo Montalvo v. Sol Meliá Vacation,* 194 DPR 209, 225 (2015), *SLG Zapata-Rivera v. J. F. Montalvo,* 189 DPR 414, 430 (2013).

Se considera un hecho esencial y pertinente, aquél que puede afectar el resultado de la reclamación acorde al derecho sustantivo aplicable. *Ramos Pérez v. Univisión, supra,* pág. 213. Es el análisis de la

existencia o no de controversias esenciales y pertinentes, lo que determina si procede dictar sentencia sumaria, pues solo debe disponerse de un caso por la vía sumaria si ello procede conforme al derecho sustantivo aplicable. *Ortiz v. Holsum de P.R., Inc.*, 190 DPR 511, 525 (2014). En otras palabras, el tribunal procederá a dictar sentencia sumaria solo cuando "esté claramente convencido de la ausencia de controversia con respecto a hechos materiales y de que la vista evidenciaria es innecesaria". *Nissen Holland v. Genthaller*, 172 DPR 503, 511 (2007). Para que proceda una moción de sentencia sumaria no solo se requiere la inexistencia de hechos en controversia, sino que también proceda conforme al derecho sustantivo aplicable. *Ortiz v. Holsum, supra*, pág. 525.

Por otra parte, es esencial reconocer que la Regla 36 de las de Procedimiento Civil, 32 LPRA Ap. V, R.36, establece de manera específica los requisitos de forma que debe cumplir la parte que promueve la moción de sentencia sumaria, así como la parte que se opone a ella. En lo pertinente, la parte promovente debe exponer un listado de hechos no controvertidos, desglosándolos en párrafos debidamente numerados y, para cada uno de ellos, especificar la página o el párrafo de la declaración jurada u otra prueba admisible que lo apoya. A su vez, la parte que se opone a la moción de sentencia sumaria está obligada a citar específicamente los párrafos según enumerados por el promovente que entiende están en controversia y, para cada uno de los que pretende controvertir, detallar la evidencia admisible que sostiene su impugnación, con cita a la página o sección pertinente. *Meléndez González, et al. v. M. Cuebas*, 193 DPR 100 (2015)*, SLG Zapata Rivera, v. J.F. Montalvo*, *supra.* (Énfasis suplido.) De este modo, "[s]e facilita … el proceso adjudicativo al poner al tribunal en posición de evaluar conjuntamente las versiones encontradas para cada uno de los hechos refutados a la luz de las referencias a la prueba que alegádamente los apoya. Este sistema claramente agiliza la labor de los jueces de instancia y propende la

disposición expedita de aquellas disputas que no necesitan de un juicio para su adjudicación". *SLG Zapata Rivera, v. J.F. Montalvo, supra,* pág. 434.

Por otro lado, la Regla 36.5 de Procedimiento Civil, 32 LPRA Ap. V, R.36.5, establece que: "[l]as declaraciones juradas para sostener u oponerse a la moción se basarán en el conocimiento personal del (de la) declarante. Contendrán aquellos hechos que serían admisibles en evidencia y demostrarán afirmativamente que el(la) declarante está cualificado(a) para testificar en cuanto a su contenido". Con respecto a la interpretación de esta Regla, el Tribunal Supremo ha resuelto que "las declaraciones juradas que contienen solo conclusiones, sin hechos específicos que las apoyen, no tienen valor probatorio, siendo, por lo tanto, insuficientes para demostrar la existencia de lo que allí se concluye". *Ramos Pérez v. Univisión P.R., Inc., supra*, pág. 216. (Énfasis suplido.) Más allá de contener hechos específicos sobre los aspectos sustantivos del caso, la declaración debe incluir "hechos que establezcan que el declarante tiene conocimiento personal del asunto declarado". *Roldán Flores v. Cuebas*, 199 DPR 664, 678 (2018).

Al revisar sentencias del Tribunal de Primera Instancia dictadas mediante el mecanismo de sentencias sumarias, o resolución que deniega su aplicación, nuestro Tribunal de Apelaciones se encuentra en la misma posición que el tribunal inferior para evaluar su procedencia. *Meléndez González et al. v. M. Cuebas*, supra. Los criterios a seguir por este foro intermedio al atender la revisión de una sentencia sumaria dictada por el foro primario han sido enumerados con exactitud por nuestro Tribunal Supremo. *Íd*. A tenor, el Tribunal de Apelaciones debe:

1) examinar de *novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra,* y la jurisprudencia le exigen al foro primario;

2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra*;

3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la

Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos;

4) y de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar de *novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.

Además, al revisar la determinación del TPI respecto a una sentencia sumaria, estamos limitados de dos maneras; (1) solo podemos considerar los documentos que se presentaron ante el foro de primera instancia, (2) solo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. *Meléndez González, et al. v. M. Cuebas*, supra. El primer punto se enfoca en que las partes que recurren a un foro apelativo no pueden litigar asuntos que no fueron traídos a la atención del foro de instancia. Mientras que el segundo limita la facultad del foro apelativo a revisar si en el caso ante su consideración existen controversias reales en cuanto a los hechos materiales, pero no puede adjudicarlos. *Íd.* en la pág. 115. También, se ha aclarado que al foro apelativo le es vedado adjudicar los hechos materiales esenciales en disputa, porque dicha tarea le corresponde al foro de primera instancia. *Vera v. Bravo*, 161 DPR 308, 335 (2004).

### b. Ley de Represalias

La Ley de Represalias prohíbe a todo patrono *despedir, amenazar, o discriminar contra un empleado con relación a los términos, condiciones, compensación, ubicación, beneficios o privilegios del empleo porque el empleado ofrezca o intente ofrecer, verbalmente o por escrito, cualquier testimonio, expresión o información ante un foro legislativo, administrativo o judicial en Puerto Rico.* 29 LPRA sec. 194a. Ello, siempre que dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada establecida por ley. Íd.

Para que se configure una causa de acción al amparo de la Ley 115, *supra, [e]l empleado deberá probar la violación mediante evidencia directa o circunstancial.* (29 LPRA sec. 194a). Para ello, *deberá establecer prima facie*

*que participó en una actividad protegida por la Ley 115, supra, y que fue subsiguientemente despedido, amenazado o discriminado.* Íd. *Marín v. Fastening Systems, Inc.,* 142 DPR 499, 511 (1997). Si se probara lo anterior, *el patrono deberá alegar y fundamentar una razón legítima y no discriminatoria para el despido.* Íd. De así hacerlo, corresponderá al empleado *demostrar que la razón alegada por el patrono era un mero pretexto para el despido.* Íd.

En virtud de lo antes indicado, *para tener una causa de acción bajo la Ley 115, supra, un empleado debe probar un nexo causal entre la conducta del demandado y el daño sufrido, ya sea con evidencia directa o circunstancial, o de manera indirecta. Rivera Menéndez v. Action Services,* 185 DPR 431 (2012); *Feliciano Martes v. Sheraton,* 182 DPR 368, 395-396 (2011). De optar por el mecanismo indirecto, corresponderá al empleado establecer *prima facie* un caso de represalia. *Feliciano Martes v. Sheraton, supra,* pág. 393. Esto último lo logrará si prueba que: (1) incurrió en una actividad o conducta protegida por ley; (2) sufrió una acción disciplinaria o adversa por parte del patrono; (3) existe *nexo causal* entre la conducta protegida y la acción disciplinaria o adversa del patrono. Íd, págs. 393-394; C. Zeno Santiago, *Re-enfoque empresarial de las represalias en el empleo,* 40 Rev. Jur. U.I.P.R. 245, 262 (2006).

Con relación a la exigencia de que exista un nexo causal entre la actividad protegida realizada por el empleado y la acción adversa efectuada por el patrono, nuestro ordenamiento adoptó la postura de la mayoría de los circuitos de la corte de apelación federal, en cuanto a la necesidad de demostrar la existencia de suficiente proximidad temporal entre ambos eventos. *Feliciano Martes v. Sheraton, supra,* págs. 397 - 398. Se ha determinado que los criterios a ser evaluados como elementos de proximidad temporal son los siguientes: (1) si el empleado fue tratado de forma distinta que otros empleados; (2) si existió un patrón de conducta antagonista en contra del empleado; (3) si las razones articuladas por el

patrono para fundamentar su acción adversa están plagadas de inconsistencias, o (4) cualquier otra evidencia que obre en el expediente para establecer el elemento del nexo causal. Íd; *Rivera Menéndez v. Action Services, supra.*

La suficiencia de la proximidad temporal como prueba exclusiva de causalidad, dependerá de cuán cerca en el tiempo están la actividad protegida ejercida por el empleado y la acción adversa llevada a cabo por el patrono. *Feliciano Martes v. Sheraton, supra,* pág. 399. Si la acción adversa del patrono es realizada inmediatamente después del empleado informarle que ha incursionado en una actividad protegida, se entiende que el elemento de proximidad temporal es suficiente para establecer el requisito de existencia de nexo causal. Sin embargo, *cuando el período de tiempo entre el ejercicio de la actividad protegida y la acción adversa del patrono aumenta, el criterio de la proximidad temporal será menos útil para comprobar que existe un nexo causal entre ambos eventos.* Íd.

## III. Aplicación del Derecho a los hechos

a.

En su primer señalamiento de error el apelante discute, de forma breve, por qué incidió el foro primario al no permitirle presentar un escrito en oposición a la moción de sentencia sumaria instada por Amgen, a pesar de haber dispuesto mediante *Resolución* tal oportunidad para las partes, sin que hubiese transcurrido el término previsto para ello.

Primero, nótese que la moción de sentencia sumaria instada por el propio apelante fue iniciada con la afirmación de que no existían hechos en controversia que impidieran disponer del asunto sumariamente[1], y el TPI coincidió con tal apreciación, pero, al aplicar el Derecho correspondiente, decidió en favor de Amgen. Tampoco apreciamos lesión alguna al debido proceso de ley del apelante, al no instar escrito en oposición a sentencia sumaria, pues, a través de su *Solicitud de sentencia sumaria,* tuvo amplia

---

[1] Ver segundo párrafo de la *Introducción* de la *Solicitud de sentencia sumaria* presentada por el apelante. Apéndice 4 del escrito de apelación, pág. 4.

oportunidad, y así la utilizó, para presentar toda la prueba documental con la que contaba para sustentar su reclamación sobre el alegado despido como represalia, y elaborar sobre el derecho que entendía pertinente. Relacionado a ello, no pasa por desapercibido que, en el ejercicio que hizo el foro primario al sopesar las mociones de sentencias sumarias presentadas por las partes, adoptó en su *Sentencia* algunos de los hechos incontrovertidos propuestos en la *Solicitud de sentencia sumaria* instada por el apelante.[2]

Sobre lo discutido, sépase que nuestro Tribunal Supremo ha manifestado que el foro primario puede dictar sentencia sumaria a favor de la parte en el litigio que no solicitó dicho remedio, si en autos constan fundamentos suficientes para ello, *P.A.C v. ELA*, 150 DPR 359, 374 (2000). En la misma Opinión el alto Foro zanjó que el hecho que una parte presente una moción de sentencia sumaria, no es garantía de que una vez se determine que esta procede, necesariamente haya que resolverla a favor de quien la presentó. Íd. En concordancia, nuestro ordenamiento permite que se dicte sentencia sumaria en contra de la parte que la solicita, siempre que no existan hechos materiales que estén en controversia. *Ortiz v. Holsum*, supra, pág. 526.

En definitiva, el TPI estaba en posición de adjudicar las mociones de sentencia sumaria presentadas por las partes, sin que fuera necesario esperar por los respectivos escritos en oposición, pues la prueba documental provista a través de las mociones dispositivas lo habilitaron para ello. El apelante tuvo oportunidad de ser escuchado, por medio de la *Solicitud de sentencia sumaria* que presentó y el tribunal *a quo* aquilató, antes de que fuera emitida la *Sentencia.*

---

[2] *Véase* entrada número 33 del expediente digital del caso que obra en el Sistema Unificado de Manejo y Administración de Casos (SUMAC), págs. 2-3. Específicamente, las alegaciones 4 y 6 de la de Moción de Sentencia Sumaria presentada por Adorno Conde.

b.

El apelante también esgrime que el foro primario emitió su dictamen fundamentado o utilizando prueba documental inadmisible, por ser de referencia. Sin embargo, al verificar la argumentación incluida por el apelante en su escrito, relacionada a la presunta prueba de referencia inadmisible, esta se circunscribió al hecho material incontrovertido número 10 de la *Moción de Sentencia Sumaria* de Amgen, (similar al 13ro de la moción dispositiva del apelante), ninguno otro. Sobre dicho hecho, el apelante afirma que estuvo sustentado por una declaración jurada de la señora Maritza Mercado, funcionaria de Amgen, que no tenía conocimiento personal de lo allí declarado, pues los documentos a los que aludía fueron suscritos por otras personas, no anunciadas como testigos en el caso. No tiene razón.

La declaración jurada de la señora Maritza Mercado[3], inicia estableciendo en calidad de qué realizaba las manifestaciones allí juramentadas. Con claridad se estableció que era *Staff Relations Sr. Manager* en Amgen, y las declaraciones allí vertidas estaban relacionadas a las funciones inherentes de su puesto, específicamente, las atinentes a las investigaciones disciplinarias de asuntos de recursos humanos, y sustentadas en la información disponible de los récords de la empresa. Es decir, la señora Mercado fungía como *Staff Relations Senior Manager* de Amgen, y, como parte de sus funciones estaba a cargo de las investigaciones disciplinarias de asuntos de recursos humanos de la empresa, así como de la actualización y mantenimiento de sus políticas, información que le era disponible por surgir de los récords de la empresa. Entonces, fue a partir de tales presupuestos que la señora Mercado realizó las declaraciones juramentadas que utilizó Amgen como prueba documental en su moción de sentencia sumaria, todas relacionadas a los procesos disciplinarios de la empresa y el récord de personal del apelante.

---

[3] Anejo 1 del *recurso de apelación*, págs. 31-33.

Establecido lo anterior, se debe considerar que, como excepción a la regla general sobre la inadmisibilidad de prueba de referencia, en la Regla 805 de Evidencia, 32 LPRA ap. VI, R. 805, se hace un listado taxativo de las instancias en las que, aun cuando la persona esté disponible como testigo, una declaración **no** estará sujeta a la regla general de exclusión de prueba de referencia. Particularmente el inciso (f) de la citada regla, establece lo siguiente:

> (f) Récords de actividades que se realizan con regularidad: Un escrito, informe, récord, memorando o compilación de datos -en cualquier forma- relativo a actos, sucesos, condiciones, opiniones o diagnósticos que se hayan preparado en o cerca del momento en que éstos surgieron, por una persona que tiene conocimiento de dichos asuntos, o mediante información transmitida por ésta, si dichos récords se efectuaron en el curso de una actividad de negocios realizada con regularidad, y si la preparación de dicho escrito, informe, récord, memorando o compilación de datos se hizo en el curso regular de dicha actividad de negocio, según lo demuestre el testimonio de su custodio o de alguna otra persona testigo cualificada, o según se demuestre mediante una certificación que cumpla con las disposiciones de la Regla 902(K) o con algún estatuto que permita dicha certificación, a menos que la fuente de información, el método o las circunstancias de su preparación inspiren falta de confiabilidad. El término negocio, según se utiliza en este inciso, incluye, además de negocio propiamente, una actividad gubernamental y todo tipo de institución, asociación, profesión, ocupación y vocación, con o sin fines de lucro.

Regla 805(f) de Evidencia, 32 LPRA ap. VI, R. 805(f).

Advertía el tratadista Ernesto L. Chiesa que *una de las más arraigadas excepciones a la regla de exclusión de prueba de referencia **es la relativa a los asientos de negocios**. Se trata de declaraciones en asientos rutinarios en actividades comerciales y de otra índole, donde la precisión y regularidad son necesarias para la buena marcha de la actividad o negocio correspondiente*[4]. (Énfasis provisto).

Juzgamos que las declaraciones de la señora Mercado, suscritas en su declaración jurada, ubican dentro de la excepción a la prueba de referencia descrita por la Regla 805(f), pues fueron basadas en récords de

---

[4] Ernesto L. Chiesa, *Tratado de Derecho Probatorio, (Reglas de Evidencia de Puerto Rico y Federales)*, Tomo II, Publicaciones JTS, págs. 803-804.

actividades que se realizan con regularidad, por una persona cualificada para ello. Con precisión, las manifestaciones recogidas en la declaración jurada versaban estrictamente sobre asuntos que correspondían a las funciones de la declarante en la empresa, según las siguientes: cuándo inició a trabajar el apelante como empleado de Amgen; el puesto que ocupaba; quiénes eran sus supervisores; las políticas sobre conducta aplicables a los empleados de la empresa; los entrenamientos recibidos por el apelante sobre tales políticas; las medidas disciplinarias impuestas al apelante por la empresa y entrenamientos relacionados. Visto lo cual, el asunto no merece mayor elaboración pues, auscultada cada manifestación de la señora Mercado, (ejercicio que no se hizo en el escrito de apelación), repetimos, es evidente que se trata del tipo de declaración hincada en récords de negocios, a través de la persona que ocupa el puesto en la empresa encargada de supervisar las actividades que allí se describen. En este sentido, la suscribiente de la declaración jurada bien hubiese podido sentarse a declarar sobre lo testificado en dicho documento, de haberse realizado el juicio plenario.

c.

El apelante también sostiene que el foro primario erró al declarar Ha Lugar la *Sentencia Sumaria* presentada por Amgen, porque presuntamente existían hechos materiales en controversia, referentes al incidente que ocasionó el despido. No obstante, según dijimos, al examinar la *Solicitud de sentencia sumaria* instada por el apelante surge su expresión contraria, en términos de que no existían hechos en controversia que impidieran disponer de la controversia de manera sumaria. Es decir, cuando el apelante fungió como promovente de la moción de sentencia sumaria afirmó que no existían hechos en controversia, pero, *a posteriori,* aseveró que sí existían hechos en controversia, la contradicción resulta evidente.

En cualquier caso, lo cierto es que, examinada *de novo* la prueba documental incluida por las partes en sus respectivas mociones dispositivas, coincidimos con el foro primario al determinar que no existían

*hechos medulares* en controversia, respecto a la única causa de acción que tuvo ante su atención del TPI, la de represalias. Este asunto está íntimamente atado al último señalamiento de error del apelante, en el que objeta la conclusión alcanzada por el TPI en su *Sentencia*, al indicar que la solicitud para que el señor Pagán realizara una investigación sobre el incidente ocurrido con la señora Rivera, no constituyó una de las actividades protegidas por la Ley de Represalias, pues fue reunido con el señor Pagán, precisamente, en respuesta a una investigación ya iniciada por la empresa sobre el asunto. Afirmamos que estos dos asuntos están imbricados, (la ausencia de hechos materiales en controversia y la inexistencia de la presunta causa de la represalia, la solicitud de una investigación sobre el incidente por el apelante), pues la documentación incluida por las partes en sus mociones dispositivas sirvió para establecer que el momento del apelante solicitar la investigación sobre los hechos, el asunto precisamente ya se estaba investigando por la empresa.

La documentación incluida por las partes en sus respectivas mociones dispositivas lo que revela es que, cuando el apelante se presentó a la reunión con sus supervisores (señora Rivera y señor Pagán), al próximo día del incidente, fue con el evidente propósito de que se comenzara o continuara una investigación sobre lo acontecido entre el señor Adorno Conde y la señora Rivera en el lugar de trabajo. Tal reunión, causada por el incidente entre la señora Rivera y el apelante, en modo alguno dependía de la petición del primero para que se llevara a cabo la misma, (de lo que tampoco hay evidencia documental que sirva para establecer que este último solicitó la investigación antes de ser citado para discutir lo sucedido junto a sus supervisores). Además, a partir de las propias expresiones del apelante, donde admitió conocer que al reunirse allí con sus supervisores estaba bajo investigación, no es concebible que el despido del apelante surgiera por la petición que este hiciera para que se investigase el incidente, sino como resultado de lo investigado. En este sentido, al momento en que

el querellante fue citado a la reunión con sus supervisores, este ya conocía que se estaba conduciendo una investigación sobre el incidente, y de que podía tener como resultado su despido. Es decir, la teoría legal esencial del apelante, dependiente de la aseveración de que su despedido fue por causa de la investigación solicitada a su patrono sobre el referido incidente con la señora Rivera, tropieza con el hecho de que fue citado y entrevistado por el señor Pagán, ante la señora Rivera, precisamente como parte de una investigación iniciada a esos efectos.

En este sentido, la prueba documental estableció que el despido fue el resultado de lo investigado, (que incluyó la observación por el señor Pagán de la conducta del apelante hacia la señora Rivera en su presencia), y no por causa de que el apelante hubiese solicitado que se investigara el suceso.

Respecto al hecho medular sobre la presunta causa de la represalia esgrimida por el apelante, la petición de una investigación sobre el incidente con la señora Rivera, no podemos apreciar que exista controversia real. En el escrito de apelación no fueron impugnadas las determinaciones de hecho 15-16 incluidas en la Sentencia, que sirvieron para establecer que, ocurrido el referido incidente entre el apelante y la señora Rivera, esta: lo reportó el mismo día de los hechos; llamó al supervisor señor Pagán e indicó sobre la agresión física, y; en horas de la mañana del próximo día le envió un correo electrónico a este último informando del incidente. Estas acciones acontecieron previo a que el apelante solicitara una investigación sobre lo ocurrido y, a todas luces, movieron al señor Pagán a reunirlos para investigar lo sucedido.

El apelante sí trata de impugnar las determinaciones de hechos 17 y 18 de la *Sentencia*, solamente porque en estas fue incluida la nomenclatura *investigación*. No obstante, el conjunto de los hechos ya establecidos como incontrovertidos, según los expusimos en el párrafo que precede, sirven para dejar establecido que la reunión citada por el señor Pagán con el apelante y la señora Rivera, necesariamente fue una respuesta

administrativa a lo reportado por esta última, es decir, para investigar lo ocurrido. Los demás hechos que el apelante trató de impugnar en el escrito de apelación, aduciendo que sí estaban controvertidos, no resultan medulares para descartar la conclusión de que la empresa se encontraba investigando los hechos ocurridos el 17 de enero de 2019, previo a que el apelante levantara tal solicitud cuando, precisamente, estaba siendo investigado al respecto.

Por último, los demás hechos que el apelante afirma en su escrito de apelación que estaban incontrovertidos y presuntamente no fueron tomados en consideración por el TPI, más bien refieren a cómo ocurrieron los sucesos del 17 de enero de 2019, (si la narrativa de lo allí acontecido se ajustaba más a lo descrito por el apelante o a lo dicho por la señora Rivera), antes que a la presunta conducta del apelante durante una actividad protegida que diera lugar a la causa de acción por represalias. La inconformidad del apelante con el resultado de la investigación conducida por Amgen, o si tal investigación resultó insatisfactoria, más bien hubiese servido para contestar si su despido fue o no justificado, pero la causa de acción por infracción a la Ley 80 no fue presentada. De este modo, en manera alguna estamos dilucidando si la investigación realizada por la empresa fue cabal o no, o si, en efecto, el 17 de enero de 2019 ocurrieron los hechos según la versión del apelante o de la señora Rivera. Sin embargo, como ya hemos explicado, aún mirando la prueba documental de manera liberal, por ser la Ley de Represalias un estatuto reparador de los trabajadores, no podemos sostener que el despido hubiese sido a causa de que el apelante solicitara una investigación sobre lo acontecido, cuando claramente ya esta se encontraba en curso.

**IV. Parte Dispositiva**

Por los fundamentos expuestos, resolvemos confirmar la *Sentencia* apelada.

Lo acordó el Tribunal y lo certifica su Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones